CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for the

MAR 1 1 2014

JULIA C. DUDLEY, CLERK
BY: HMcDonald
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KENNETH VALENTINE AWE,<br>　　Plaintiff, | ) Civil Action No. 7:13-cv-00143<br>)<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| HAROLD CLARKE, et al.,<br>　　Defendants. | ) By: 　Hon. Jackson L. Kiser<br>) 　　Senior United States District Judge |

　　Kenneth Valentine Awe, a Virginia inmate proceeding pro se, commenced a civil rights action, pursuant to 42 U.S.C. § 1983. Plaintiff named as defendants Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"); Randal Mathena, Warden of the Red Onion State Prison ("ROSP"); and Dr. Miller, a private physician serving ROSP inmates. I dismissed the claims against Clarke and Mathena and terminated them as defendants by a prior Memorandum Opinion and Order, and presently before me is Dr. Miller's motion for summary judgment. Plaintiff states that he cannot respond to Dr. Miller's motion without photocopies of his medical record and asks me to order the VDOC to give him copies of unspecified medical records. After reviewing the record, I find Plaintiff fails to adequately explain why he cannot oppose Dr. Miller's motion for summary judgment and grant Dr. Miller's motion.

I.

　　Plaintiff simply alleges in the verified Complaint:

> [On] [January 28, 2013,] during intake at [ROSP], the ROSP security and medical state employees (acting under color of state law) took this Plaintiff's eye medications and eyeglasses leaving this Plaintiff who[]se known eye condition is documented in the VDOC medical records without needed eye medications, causing this Plaintiff unbearable eye pain and loss of eyesight. The ROSP M.D. Dr. Miller knowingly with medical knowledge refuses to provide Plaintiff with needed eye medication to rel[i]e[]ve – prevent eye pain, loss of eyesight, [and] damage to eyes. [Dr. Miller] knowingly causes the Plaintiff eye pain and injury

> for over eight weeks on this date of March 25[,] 2013 inflicting cruel and unusual punishment with deliberate indifference. . . .

Compl. 3.

In response, Dr. Miller avers the following facts. Dr. Miller performed the initial medical evaluation of Plaintiff when Plaintiff arrived at ROSP. Plaintiff requested artificial tear drops for his dry eyes, and Dr. Miller confirmed via Plaintiff's medical record that a prior physician had prescribed artificial tear drops in September 2012 because Plaintiff experienced mild dry eyes. Dr. Miller referred Plaintiff to an optometrist, Dr. Repko, who normally visited ROSP twice monthly.[1] Although Plaintiff saw Dr. Miller at unrelated medical appointments on February 28 and March 7 and 14, 2013, Plaintiff did not mention any issue with his eyes. At a medical appointment on March 21, 2013, Plaintiff submitted a sick call request to see the optometrist for "painful eyes." Plaintiff explained to a nurse that his eyes were cloudy and painful, and the nurse referred Plaintiff to Dr. Repko like Dr. Miller had done in January.

On April 3, 2013, Plaintiff saw Dr. Repko, who gave him a prescription for artificial tears and "Lacri-lube ophthalmic ointment." Plaintiff saw Dr. Repko again on May 15, 2013, and requested more artificial tears because the first prescription did not last thirty days. Dr. Repko wrote a new order to allow Plaintiff to receive more than one bottle of artificial tear drops per month. Plaintiff did not complain about his eyes at his next medical appointment with Dr. Miller on June 25, 2013, which was about a different medical issue.

---

[1] Dr. Miller's typical practice is to refer patients with a non-emergent eye complaint, like mild dry eyes, to Dr. Repko, who can provide optimal eye care and is readily available at ROSP.

II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

A.

In response to Dr. Miller's motion for summary judgment, Plaintiff states that he needs free photocopies from agents of the VDOC, which "can prove defendant is a bare faced liar who acted deliberately indifferent to Plaintiff's serious medical need." Pl.'s Resp. 1. I construe the statement as expressing that he cannot present facts essential to justify opposition, pursuant to Federal Rule of Civil Procedure 56(d). See, e.g., Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). Rule 56(d) permits a district court to defer or deny the

motion for summary judgment, permit discovery, or issue any other appropriate order when a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Plaintiff's statement, which is not an averment, wholly fails to specify reasons how discovery is necessary in order to contradict Dr. Miller's averments. Plaintiff does not identify any information that he believes would be adduced by discovery and simply demands photocopies from a nonparty. Accordingly, Plaintiff's response is insufficient to properly invoke Rule 56(d).[2]

---

[2] After Plaintiff already filed his responses to the motion for summary judgment, Plaintiff served "Plaintiff's Interrogatories and Request for Production of Documents" and "Request for Admissions" on Dr. Miller and filed a motion "to Show Defendant's Statements are Lies in Need of Formal[] Address." By his responses dated January 20, 2014, Dr. Miller objected to the Interrogatories as overly broad, vague, burdensome, or not reasonably calculated to lead to the discovery of admissible evidence. Without waiving an objection, Dr. Miller also replied that he does not have any responsive information and/or document in his control that responds to Interrogatories 1 through 6 and 8. Thereafter, Plaintiff filed a motion to compel Dr. Miller's answers sans objections to all nine Interrogatories and payment of $3,700.00 for Plaintiff's "reasonable expenses."

After reviewing the record, I deny the motion to compel because Plaintiff did not certify that he "has in good faith conferred or attempted to confer with the person . . . failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Furthermore, Dr. Miller has established valid bases for his objections. Plaintiff's vague and complex requests frustrate any attempt to provide an accurate answer and are not reasonably calculated to lead to discoverable information, and his request for $3,700 is baseless. This action is pursuant to 42 U.S.C. § 1983 and the Eighth Amendment, and Dr. Miller's history with other patients is not relevant to the disposition of Plaintiff's specific claim of deliberate indifference. Plaintiff's repeated calls for this court compel the disclosure of his medical record to determine whether any information could be responsive without something more than the oft-repeated conclusion, "he's lying," suggests a "fishing expedition." See Cohn v. Bond, 953 F.2d 154, 159 (4th Cir. 1991) ("[D]iscovery should not be used for fishing expeditions. . . ., and mere speculation and conjecture are insufficient grounds for discovery."). Accordingly, the motion to compel is denied.

Plaintiff's motion "to Show Defendant's Statements are Lies in need of Formal[] Address" is also denied because none of the arguments raised in the motion are pertinent to the disposition of this action. For example, the Clerk's entry of default that was set aside by the court upon Defendant's showing of good cause has nothing to do with the claim of deliberate indifference. Furthermore, whether medical staff treated unrelated "bleeding" or a "spine condition" is not relevant or probative of Dr. Miller's involvement with Plaintiff's dry eyes.

I note that Plaintiff included with the motion a copy of his consent to release confidential health information, signed on February 28, 2014. I will not delay resolution of this matter. The instant motion for summary judgment has been ripe since December 2013, and Plaintiff has neither requested more time nor established excusable neglect to continue the disposition of this case. Although Plaintiff had time after Dr. Miller's motion for summary judgment to respond or to request more time, he did not, and as the court had warned, the case was ripe for disposition twenty-one days after Dr. Miller filed the motion for summary judgment. See, e.g., Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989) (stating pro se litigants are subject to time requirements and respect for court orders as represented litigants). Plaintiff fails to address why he waited more than a year after the facts of this action took place and nearly a year after he instituted this action to sign the consent form to receive his own medical record.

**B.**

I grant Dr. Miller's motion for summary judgment because Plaintiff fails to establish Dr. Miller's deliberate indifference. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may also be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851.

Dr. Miller performed the initial medical evaluation of Plaintiff when Plaintiff arrived at ROSP in January 2013, and Plaintiff did not complain of eye pain at that time. Plaintiff explained that he previously had a prescription for artificial tear drops for his dry eyes, and he does not allege either that Dr. Miller took the artificial tear drops from him or that he informed Dr. Miller that his artificial tear drops were taken from him upon entering ROSP. Dr. Miller referred Plaintiff to the prison's optometrist, who, to Dr. Miller's knowledge, visited the prison twice a month. Nothing in the record demonstrates that Dr. Miller knew that Plaintiff had to wait two months to meet with the optometrist or was experiencing eye pain or that Plaintiff told Dr.

Miller at any time that he was experiencing eye pain.[3] The optometrist examined Plaintiff, gave him a prescription for artificial tear drops, and later increased the amount of artificial tear drops Plaintiff could have each month. Even if Dr. Miller allegedly deviated from a medical standard of care, a claim of medical malpractice is not sufficient to state a claim under the Eighth Amendment. See, e.g., Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Accordingly, Plaintiff fails to establish that Dr. Miller was personally aware of facts indicating Plaintiff experienced pain from mild dry eyes, and Dr. Miller is entitled to summary judgment.

### III.

For the foregoing reasons, I grant Dr. Miller's motion for summary judgment.

ENTER: This 11th day of March, 2014.

                                                         *Jackson L. Kiser*
                                                        Senior United States District Judge

---

[3] Notably, Plaintiff has not averred that he told Dr. Miller about his eye pain at any appointment. Furthermore, nothing indicates that Dr. Miller was aware either of Plaintiff's emergency grievance, sick call request, or requests for services that he sent to various ROSP departments complaining about eye pain or the nursing staff's responses to those requests.